## Rosenthal Estate

*Smith, Cahill & Aker*, for accountant.

TAXIS, P. J., October 19, 1956.—Testator died on June 7, 1908, leaving a will dated March 31, 1908, probated on June 12, 1908, wherein and whereby, inter alia, he gave the residue of his estate to his executors in trust, to pay over semiannually the net income to his wife, Estelle M., until his son, Joseph, and his daughter, Isabella Fannie, should arrive at the age of 21 years respectively, and then to pay a one-quarter part of the income to each of said two children until they should arrive at the age of 30 years, and upon their arrival respectively at said age to pay each of said children a one-quarter part of the principal, and to continue to pay the remaining one-half part of the income to his said wife during her life and after her death to pay the remaining one-half part of the principal to his said two children. Estelle M. Rosenthal, the widow, subsequently remarried (by remarriage Moore) and was sole income beneficiary until her death on February 10, 1956.

The account shows a balance of principal of the trust of $17,419.33, and a balance of income of $275.40.

Testator having died prior to the enactment of the direct inheritance tax, there is no transfer inheritance tax due the Commonwealth.

Attached to their appearance slip, counsel for the accountant have submitted the following statement:

"Since the petition for adjudication was executed, one of the distributees, Isabelle Attwood, has requested the trustee to pay from principal the following items:

| | |
|---|---:|
| "Baker Nursing Home, Inc. for care of life tenant | $182.00 |
| "Baker Nursing Home, Inc. to reimburse for medical care of life tenant | 43.46 |
| "Dr. Stewart F. Brewen for medical attention to life tenant | 120.00 |
| "Dr. D. H. Huffer for medical attention to life tenant | 25.00 |
| "Wilson Storage for moving and warehouse charges and insurance on life tenant's effects from 6/5/54 to death of life tenant | 79.80 |
| Total | $450.26 |

| | |
|---|---:|
| "Funeral expenses of life tenant payable to Koch Funeral Home | $842.84 |

"The trustee believes it may properly pay the items above listed (except possibly the funeral bill) within the power granted in clause LASTLY of decedent's will '. . . to pay from the principal of my estate such amounts for the support and maintenance of my said wife . . . as they [i.e. the trustee and its successors] in their discretion may deem necessary.'

"The life beneficiary left no estate other than $13.22 available for payment of the foregoing bills.

"The trustee stands ready to make such distribution as the Court may award in respect of any or all the foregoing items and calls to your Honor's attention the cases of Swinson Estate, 167 Pa. Super. 293, annotated Fiduciary Review, September 1950, page 2; Frankenfield Estate, No. 2, 2 Fiduc. Rep. 661; and

Persun v. Decker, 6 Fiduc. Rep. 313, as being applicable to the situation here involved."

The rule, as it appears in the Restatement, Trusts, §128, comment e, Trust for Support, pages 326, 327, is that:

. . . "It is a question of interpretation whether the trustee is authorized to pay the funeral expenses of the beneficiary. The inference is that he is so authorized." This rule was partially adopted in Swinson Estate, 167 Pa. Superior Ct. 293 (1950). The court quotes with approval the statement of the rule as it appears in Scott on Trusts, (2nd Ed.) Vol. 2, §128.4, pages 943, 944:

"It is a question of interpretation of the terms of the trust whether the trustee can properly pay the funeral expenses of the beneficiary. In some cases it has been held that the settlor intended to include such expenses, but in other cases in view of the language used in the trust instrument the court has reached the opposite result. Ordinarily it would seem that if there are trust funds available for the purpose of paying funeral expenses, at least if the beneficiary left no property sufficient for the purpose, the trustee has the power and the duty to pay the funeral expenses of the beneficiary for whose support the trust was created . . ."

However, in Richey's Estate, 251 Pa. 324 (1916), the court refused to allow the funeral expenses of the beneficiary out of the principal of the trust. Swinson Estate, supra, distinguishes Richey's Estate, viz.: (a) The Supreme Court's opinion did not contain any general discussion of the question; (b) it appeared that the wife, as life beneficiary, left an estate of her own in excess of $5,600; and (c) the will provided for the " 'maintenance and support' of the beneficiary," while in Swinson Estate the additional word "care" was used in the provision for the beneficiary. Cf.

Hipple's Estate, 30 Dist. R. 378. It further appeared in Richey's Estate that the beneficiary was testator's aunt and the remainderman was an incorporated charity.

In the case before me, the third, and what seems to have been regarded as the most important reason for distinguishing Richey's Estate from Swinson Estate, namely, the use of the word "care," as applied to the beneficiary, is absent. No word or words of similar import appear anywhere in the will. If it be reasonable to assume that testator intended to pay the funeral expenses of his widow it would seem to be just as reasonable to believe that testator did not intend to relieve the present husband of the beneficiary of the primary legal responsibility, which the latter undertook when he married the widow; especially when, as here, payment of funeral expenses out of principal would redound to the financial detriment of testator's own children.

Many authorities from this and other jurisdictions are collected and discussed in 18 A. L. R. 2d 1236.

For the above reasons, I am constrained to follow the law as defined in Richey's Estate, supra, and I hold that the funeral expenses of the life beneficiary are not payable from the principal of the trust.

Upon the indication by the trustee contained in its statement quoted above, that it elects to pay the other charges submitted amounting to $450.26, the same are hereby allowed and awarded to the persons who furnished the services.

The net ascertained balance of principal and income for distribution, subject to distributions already properly made, are awarded as suggested under the last paragraph of the petition for adjudication.

The account is confirmed, and it is ordered and decreed that Tradesmens Bank and Trust Company, formerly Land Title Bank and Trust Company, sub-

stituted trustee for residuary trust, forthwith pay the distributions herein awarded.

And now, October 19, 1956, this adjudication is confirmed nisi.